# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS NEIL YORGENSEN,<br><br>Defendant. | No. CR15-4043-MWB<br><br>**ORDER ON MOTION<br>FOR RECONSIDERATION OF<br>REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a motion (Doc. No. 54) by plaintiff (the Government) for reconsideration of the Report and Recommendation (Doc. No. 48) filed October 2, 2015. In that document, I recommended that Judge Bennett grant defendant Dennis Yorgensen's motion (Doc. No. 23) for a *Franks* hearing and to suppress all evidence obtained as a result of the search of his home and a post-arrest interview. The Government asks that I reconsider only that portion of the Report and Recommendation in which I concluded that Yorgensen's post-arrest statements should must be suppressed on grounds that they were the fruit of the poisonous tree.[1] Yorgensen has filed a resistance (Doc. No. 64).

---

[1] In addition, the Government has now filed objections (Doc. No. 67) to the Report and Recommendation. Consistent with its motion to reconsider, the Government does not object to my recommendation to suppress the evidence obtained from the search of Yorgensen's apartment. Doc. No. 67 at 1.

## II. DISCUSSION

Neither party objects to the findings of fact set forth in my Report and Recommendation. *See* Doc. No. 54 at 1; Doc. No. 66 at 3; Doc. No. 67 at 2. As such, I incorporate those findings herein and will refer to them as necessary in addressing the Government's motion. The Government's argument focuses on the four factors used to determine whether a post-arrest statement retains the taint of an illegal arrest.

### A. *Applicable Standards*

If a *Franks* hearing establishes perjury or reckless disregard, and the affidavit, excluding the false material, is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). "[T]he exclusionary rule … prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Murray v. United States*, 487 U.S. 533, 536-37 (1988) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)); *see also Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Thus, evidence derived through police illegality is nonetheless admissible "if the causal connection between the constitutional violation and the discovery of the evidence has become so attenuated as to dissipate the taint." *United States v. Wipf*, 397 F.3d 677, 684 (8th Cir. 2005) (citing *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987) (en banc) (in turn citing *United States v. Ceccolini*, 435 U.S. 268, 273–80 (1978)).

To break the causal chain between an illegal arrest and a statement given later, the statement must be "sufficiently an act of free will to purge the primary taint." *United States v. Vega-Rico*, 417 F.3d 976, 979 (8th Cir. 2005) (citations omitted). In

determining whether a post-arrest confession is the product of free will, a court must consider four factors: (1) the giving of Miranda warnings; (2) the temporal proximity of the illegality and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir. 2004); *see also United States v. Riesselman*, 646 F.3d 1072, 1080 (8th Cir. 2011). The Government has the burden of showing that the evidence is untainted. *Riesselman*, 646 F.3d at 1079 (citing *Alderman v. United States*, 394 U.S. 165, 183 (1969)).

## B. Analysis

The Government's motion for reconsideration addresses only the question of whether the statements Yorgensen made after his arrest were tainted by the illegality of the search and arrest.[2] The ultimate question, as the Government points out, is whether these statements were sufficiently purged of the taint of the previous constitutional violations. *Riesselman*, 646 F.3d at 1079. I will address the four factors below.

### 1. Miranda Warnings

The Government argues that the giving of Miranda warnings in this case weighs in the Government's favor in support of a finding of attenuation. The fact that a Miranda warning was given is certainty better for the Government than if it wasn't However, I

---

[2] The Government's motion is a second bite at the apple. The Government had the opportunity to fully brief the fruit of the poisonous tree doctrine in its resistance to Yorgensen's motion. At that time, the Government devoted one page to a superficial discussion of the issue. Doc. No. 40-1 at 9-10. Now that I have filed a Report and Recommendation favorable to Yorgensen, the Government is taking the issue more seriously, addressing it with a 15-page brief. Doc. No. 54. While I will proceed with an analysis of the Government's arguments, I do not condone the practice of addressing an issue fully only after the fact.

explained in the Report and Recommendation why I concluded that the Miranda warning did not purge the taint of the unlawful conduct. Doc. No. 48 at 21. Having carefully reviewed the Government's arguments, I find no reason to change this conclusion.

### 2. *Temporal Proximity*

The Government next contends that the passage of two days dissipated the taint of the illegal search. Although the Government cites several cases involving periods of time shorter than two days, I do not find those cases to compel a finding of attenuation. *See Brown v. Illinois*, 422 U.S. 590, 609 (1975) ("Application of the *Wong Sun* doctrine will generate fact-specific cases bearing distinct differences as well as similarities, and the question of attenuation inevitably is largely a matter of degree.") (Powell, J., concurring); *see also United States v. Fazio*, 914 F.2d 950, 958 (7th Cir. 1990) ("the time span between the police misconduct and the confession is not 'dispositive on the question of taint.'") (internal quotations omitted).[3]

Yorgensen was in custody as a result of an illegal arrest during the entire two-day period. He was then interviewed about the same topics that led to his arrest (drug use and trafficking). In *Vega-Rico,* four days had passed and "[t]he interview was conducted for purposes unrelated to the circumstances surrounding the Fourth Amendment violation." *Vega-Rico*, 417 F.3d at 980. Under those facts, the Eighth Circuit Court of Appeals affirmed a finding of attenuation. *Id.* In a concurring

---

[3] Upon reflection, I agree that one sentence in my Report and Recommendation was poorly phrased. I wrote: "The fact that Yorgensen spent two days in custody is simply irrelevant to the analysis." Doc. No. 48 at 21. I did not mean to suggest that the passage of time is not a relevant factor. Indeed, as noted above, it is one of the four "attenuation" factors. My intent was to communicate my finding, in this particular case, that the two days Yorgensen spent in custody did not change the fact that his statements were a direct result of an illegal search and seizure.

opinion, Judge Bye noted that the Fourth Amendment requires a broader application of the exclusionary rule than does the Fifth Amendment, along with a more exacting standard to purge the taint of a violation. *Id.* (Bye, J., concurring). He also observed that being in custody may, by itself, "impel the defendant to confess." *Id.* at 981 (quoting *People v. White*, 512 N.E.2d 677, 688 (Ill. 1987)).

Having carefully reviewed the Government's newly-cited authorities, I find no reason to change my prior conclusion that the passage of two days, during which Yorgensen was continuously detained due to an unlawful search, did not dissipate the taint of the Fourth Amendment violation.

### 3. *Intervening circumstances*

The Government argues that there were intervening circumstances that require a finding of attenuation. Specifically, the Government argues that Yorgensen "reached out to law enforcement and initiated the conversation he now seeks to suppress." Doc. No. 54 at 9. Yorgensen disagrees and argues that the Government's theory as to how that conversation arose is speculative.

The Government indicates I made a finding that Yorgensen told Captain Erritt that he wanted to speak to Agent Jones. Doc. No. 54 at 9. That is not correct. My finding was that "Erritt called DNE Agent Robert Jones and told him Yorgensen wanted to talk to him." Doc. No. 48 at 7. Jones testified about two calls he received from Erritt. First, after Yorgensen was arrested Erritt called Jones and asked if he wanted to interview Yorgensen. When Jones declined, Erritt stated that he would interview Yorgensen himself. Later, Jones received a second call from Erritt during which Erritt stated that Yorgensen had asked – by name – to speak to Jones. Jones further testified that he had not previously met Yorgensen. I have no reason to doubt Jones' testimony that he received a call from Erritt in which Erritt stated that Yorgensen wanted to talk

5

with Jones. However, Erritt did not testify. Jones' testimony establishes what he heard from Erritt but not what happened between Erritt and Yorgensen that caused Erritt to call Jones.

Based on this record, I cannot find that the interview with Jones arose from Yorgensen's unsolicited requested. It is at least as likely that Erritt interviewed Yorgensen – as he said he would – warned him about federal charges and persuaded him to talk to Jones. This would explain the unusual manner in which the meeting between Jones and Yorgensen began:

> Jones: How's it going?
>
> Yorgensen: Not too bad. How are you doing?
>
> Jones: Good. I'm Bob Jones. I hear ya—you wanted to talk.
>
> Yorgensen: Uh, I don't understand what they're, what they're putting me on, on federal. Doing what, what, I don't understand this.
>
> Jones: Right.
>
> Yorgensen: Um, now, uh, I mean, I heard that, uh, you needed to talk to me.[4]
>
> Jones: No, not really.

Ex. F at 10:32:29-10:33:05. Clearly, someone told Yorgensen about federal charges before the interview. Jones then arrived with the understanding that Yorgensen had asked to talk to him while Yorgensen expressed a belief that Jones is the one who wanted to talk. Because Erritt did not testify and the Government bears the burden of proving

---

[4] The Government's version of this comment is that Yorgensen said: "Now, I mean—you need to talk to me." Doc. No. 54 at 9 n.4. Having carefully reviewed the recording many times, I disagree. I quite clearly understand Yorgensen to state: "I heard that, uh, you needed to talk to me."

6

attenuation, I cannot accept the Government's invitation to find that Yorgensen made an unsolicited request to initiate the interview he now seeks to suppress.[5]

In the Report and Recommendation, I indicated that the analysis would be different if Yorgensen had been released from custody and then voluntarily returned to speak with Jones. Doc. No. 48 at 17. The Government takes issue with this statement and asserts that the Eighth Circuit has expressly ruled otherwise. Doc. No. 54 at 5 (citing *Vega-Rico,* 417 at 980). This is not correct. In *Vega-Rico,* the Eighth Circuit concluded that the defendant's statements were sufficiently attenuated from the Fourth Amendment violation so as to dissipate the taint. 417 F.3d at 980. Vega-Rico was arrested by the Yankton Police Department after a traffic stop and drug dog deployment resulted in the discovery of marijuana. *Id.* at 978. After the arrest, Vega-Rico was held in custody by the Yankton Police Department for four days while his immigration status was investigated and the Department of Homeland Security (DHS) was notified. *Id.* at 978. A DHS agent then transported Vega-Rico to a DHS facility in Sioux Falls. *Id.* At that location, he agreed to speak with the DHS agent and made incriminating statements relating to his identity, past deportations and his current immigration status. *Id.*

The district court later determined that the search of Vega-Rico's vehicle violated the Fourth Amendment because the police dog was not sufficiently reliable for drug detection. *Id.* at 978-79. However, the court found that Vega-Rico's subsequent, post-Miranda statements to DHS were sufficiently an act of free will to purge the taint of the Fourth Amendment violation. *Id.* at 979. The Eighth Circuit affirmed, stating:

> In this case, Vega–Rico's post-Miranda statements were made four days after the Fourth Amendment violation occurred. The interview was conducted in a different city by an agent from a separate law enforcement agency, and neither agent nor agency had any involvement in the initial

---

[5] While Yorgensen stated during the interview that he knew he knew people who had talked to Jones, Ex. F at 10:56:55, this does not demonstrate that Yorgensen initiated the interview.

> Fourth Amendment violation. The interview was conducted for purposes unrelated to the circumstances surrounding the Fourth Amendment violation. In addition, the official misconduct in this case—reliance on an unreliable drug-sniffing dog—was not flagrant.

*Id*. at 980. After explaining these reasons for attenuation, the court stated:

> While Vega–Rico incorrectly argues that the statements would only be free of taint if they were made after he was released and then voluntarily returned to the DHS, relevant precedent says otherwise. *See Hernandez–Hernandez*, 384 F.3d at 564–67.

*Id*. In other words, Vega-Rico argued for a per se rule that attenuation could never occur absent a release from custody and voluntary return. The Eighth Circuit rejected this argument. *Id*.

I did not suggest that a per se rule exists. Instead, I noted that the analysis would be different (meaning, of course, more favorable for the Government) if Yorgensen had been released from custody and had then voluntarily returned to speak with Jones. Doc. No. 48 at 17. This is an accurate statement of the law. *See Taylor v. Alabama*, 457 U.S. 687, 691-94 (1982) (confession not admissible where only six hours elapsed between illegal arrest and confession, defendant in police custody entire time, police repeatedly questioned defendant, took fingerprints, and subjected defendant to lineup without counsel present); *see also United States v. Harris*, 221 F.3d 1048, 1052 (8th Cir. 2000) (finding that continuous custody has a coercive effect and affects the analysis of voluntariness of a confession).

The factors that led to a finding of attenuation in *Vega-Rico* are largely absent here. The interview was not conducted for reasons unrelated to the Fourth Amendment violation. The search warrant that lead to Yorgensen's arrest discussed a previous history of drug trafficking, the scent of marijuana and a home invasion for "drug reasons." Ex. A. Jones' investigation was directly related to Yorgensen's

8

involvement with drug trafficking. Among other things, Jones raised the issue of marijuana being found in Yorgensen's home, illustrating that Jones sought to use information obtained because of the search to elicit additional information from Yorgensen.[6]

Nor was Yorgensen transferred to the custody of another agency before the interview occurred. While Jones himself is employed by a different agency, the interview was conducted at the Sac County Jail with a Sac County Sherriff's Deputy in the room. Ex. F. Finally, as and noted above, there is evidence that Erritt spoke with Yorgensen before arranging the meeting between Yorgensen and Jones.

In short, my careful consideration of the Government's enhanced arguments does not persuade me that my prior finding as to the lack of intervening circumstances was wrong. Jones was arrested unlawfully on drug charges and was kept for two days in the custody of the very agency that violated his rights. He was then interviewed about drug trafficking while still in custody, with the circumstances that led to the interview being unsettled, at best. There is absolutely no evidence suggesting that Yorgensen would have spoken with Jones but for the fact that he was jailed after an illegal arrest.[7] I find that the Government has failed to meet its burden of establishing the presence of

---

[6] Again, I note that Jones had nothing to do with the illegal search and Yorgensen's resulting arrest. Jones simply acted in response to information from Erritt about Yorgensen's alleged desire to talk.

[7] The Government argues that suppression cannot be premised solely on a finding of "but-for" causation between initial illegality and a confession. I have never suggested otherwise. "But-for" causation is, however, a necessary condition for suppression. *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) ("Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression."). As such, without a "but-for" finding, suppression would not be possible. The combination of that finding and the Government's failure to prove attenuation is what caused me to recommend suppression.

intervening circumstances such that Yorgensen's statements to Jones were "sufficiently an act of free will to purge the primary taint." *Vega-Rico*, 417 F.3d at 979.

### *4.     Purpose and Flagrancy of Official Misconduct*

Finally, the Government argues that neither Deputy Meyer nor Deputy Erskine acted in a way to constitute "purposeful or flagrant misconduct." This factor is the "most important factor because it is directly tied to the purpose of the exclusionary rule- deterring police misconduct." *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006). As the Eighth Circuit has noted, courts will find "purposeful or flagrant conduct where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed "in the hope that something might turn up." *Id.* (citations omitted).

In the Report and Recommendation, I found that Deputy Meyer acted with reckless disregard for the truth by applying for a search warrant with an affidavit that contained an untrue statement while omitting material information. Doc. No. 48 at 17. The Supreme Court has stated:

> "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, <u>reckless</u>, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."

*Herring v. United States*, 555 U.S. 135, 144 (2009) (emphasis added). Moreover, even an absence of purposeful or flagrant misconduct would not, by itself, establish attenuation. *See, e.g.*, *United States v. McKines*, 933 F.2d 1412, 1430 (8th Cir. 1991) (en banc) (Magill, J., dissenting) (explaining that although the record did "not show

flagrant or purposeful misconduct" there was not significant attenuation to purge the taint from the illegal detention).[8] The Government "must show the evidence obtained after the illegal search was not 'come at by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint.'" *Riesselman*, 646 F.3d at 1079 (quoting *Wong Sun*, 371 U.S. at 488).

Here, the violation of Yorgensen's rights was not accidental. The Government has not challenged my finding that Meyer acted with reckless disregard for the truth. Thus, the exclusion of Yorgensen's subsequent statements can meaningfully deter reckless conduct. *Herring*, 555 U.S. at 144. Moreover, the conduct was sufficiently culpable to be worth the cost of exclusion. Indeed, the current status of this case demonstrates that exclusion is necessary for its deterrence effect. The Government does not object to my determination that the search warrant – the execution of which led to Yorgensen's arrest – was unlawful. *See* Doc. No. 67 at 1. In effect, the Government has elected to punt on that issue and to move forward without the evidence seized from Yorgensen's home.

What the Government really wants to use (hence its new, 15-page brief) are Yorgensen's incriminating statements. Permitting that usage would not have a deterrent effect on reckless search warrant practices. After all, even if the seized evidence is excluded, incriminating statements made while the defendant is wrongfully in police custody might prove to be more valuable. For this reason, when the fruits of a Fourth Amendment violation are confessions, the exclusionary rule must be applied to ensure that the confession is not causally linked to the illegality. *United States v. Fellers*, 397 F.3d 1090, 1095-96 (8th Cir. 2005) (citing *Brown*, 422 U.S. at 602–03).

---

[8] The majority did not reach this issue, as it determined that no seizure occurred. *Id.* at 1422-23.

Here, Yorgensen's statements would not have been made absent the reckless police misconduct that caused him to be locked up for two days and warned of possible federal charges before he agreed to speak. The Government has failed to prove that his statements were not a direct result of the Fourth Amendment violation, nor has it established dissipation of the taint. I find no basis for changing my prior recommendation that the statements Yorgensen made after his arrest be suppressed.

### III. CONCLUSION

For the foregoing reasons, the Government's motion (Doc. No. 54) for reconsideration of my Report and Recommendation is **denied**.

**IT IS SO ORDERED.**

**DATED** this 16th day of November, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE